UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LEON C. BRECH, | ) | CIV. 10-4123-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANT FEDERAL DEPOSIT |
| | ) | INSURANCE CORPORATION'S |
| CU MORTGAGE DIRECT, LLC; | ) | MOTION TO DISMISS AND |
| ONEWEST BANK; | ) | GRANTING DEFENDANT CU |
| FEDERAL DEPOSIT INSURANCE | ) | MORTGAGE DIRECT, LLC'S |
| CORPORATION; and | ) | MOTION FOR SUMMARY |
| DOES 1-50, | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff, Leon C. Brech,[1] filed a pro se action against defendants, CU

Mortgage Direct, LLC, OneWest Bank, the Federal Deposit Insurance

Corporation (FDIC), and John Does 1-50, alleging a breach of contract claim

and violations of various federal laws relating to the banking industry. The

FDIC moves to dismiss or, in the alternative, for summary judgment. CU

Mortgage moves for summary judgment or, in the alternative, to dismiss or for

judgment on the pleadings. Brech resists the motions. The motions are

granted.

---

[1] While Leon Brech is the only named plaintiff in this action, he often
states in his pleadings that he is bringing this action on behalf of him and his
wife, Rhonda Brech. As the master of his complaint, Leon chose to only name
himself as a plaintiff. Therefore, Leon Brech is the only properly named
plaintiff.

## BACKGROUND

The FDIC and CU Mortgage filed statements of material fact in support of their motions. Brech did not respond to these statements as required by the local rules,[2] but rather argues the facts in his briefs opposing the dispositive motions. The court adopts the FDIC's and CU Mortgage's statements of material fact to the extent that Brech does not argue opposing facts. In the light most favorable to Brech, the nonmoving party, the undisputed, pertinent facts are as follows:

On or around July 28, 2005, Leon and Rhonda Brech executed and delivered an adjustable rate promissory note in the amount of $202,432 plus interest (Note) payable to CU Mortgage. The Note provided that the Brechs would make monthly installment payments consisting of principal and interest until the Note was fully paid. To secure payment for the Note, the Brechs executed and delivered a mortgage to CU Mortgage for Lot 6B in Block 6 of Berry Addition to the city of Sioux Falls, Minnehaha County, South Dakota (Mortgage). The Mortgage was filed in the Minnehaha County Office of the Register of Deeds on August 2, 2005.

---

[2] D.S.D. Civ. LR 56.1(B): "A party opposing a motion for summary judgment shall respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment shall identify any material facts as to which it is contended that there exists a genuine issue to be tried."

On October 9, 2008, CU Mortgage assigned the Mortgage to IndyMac. The assignment was recorded in the Minnehaha County Office of the Register of Deeds on October 9, 2008.

The Brechs were unable to make the Note's required payments and were in default. IndyMac brought suit against the Brechs for foreclosure of the Note and Mortgage in the Second Judicial Circuit of Minnehaha County, South Dakota. *See IndyMac Fed. Bank FSB v. Leon Brech, Rhonda Brech & Michael D. Harris, Tr. of the Brech Family Trust*, Civ. 08-4408 (S.D. 2d Cir. 2008) (*Civ. 08-4408*). IndyMac moved for summary judgment and Judge Stuart Tiede entered judgment in favor of IndyMac on July 10, 2009, foreclosed on the Mortgage, and authorized the Minnehaha County Sheriff to sell the property at a public auction. Docket 12-2 at 3-4. Judge Tiede found that the Brechs owed IndyMac $220,206.65, consisting of the Note's principal, accrued interest, and other miscellaneous costs. Docket 12-2 at 3. A sheriff's sale was later conducted and the property was sold.

On July 11, 2008, the federal Office of Thrift Supervision (OTS) closed IndyMac. Under 12 U.S.C. § 1821(c), the FDIC can accept an appointment as a receiver for any insured depository institution. The FDIC was appointed receiver in a "pass-through receivership" (FDIC-Receiver I). In this type of receivership, the failed institution is closed, the FDIC is appointed receiver, and a new, interim institution is created, for which the FDIC is appointed

3

conservator. After FDIC-Receiver I was appointed, OTS authorized the creation of IndyMac Federal and appointed the FDIC as conservator (FDIC-Conservator).

Pursuant to a purchase-and-assumption agreement, FDIC-Receiver I transferred the bulk of IndyMac's assets and deposit liability to FDIC-Conservator. The transfer did not include any defensive litigation involving IndyMac.

On March 19, 2009, OTS closed IndyMac Federal and appointed the FDIC as receiver for IndyMac Federal (FDIC-Receiver II). Also on March 19, 2009, FDIC-Receiver II agreed to transfer substantially all of IndyMac Federal's assets and certain liabilities to OneWest.

On November 18, 2009, the FDIC published a notice of worthless determination stating that IndyMac's assets were insufficient to make any distributions on general unsecured creditors' claims; thus, such claims had no value. *See Determination of Insufficient Assets to Satisfy Claims Against Financial Institution in Receivership*, 74 Fed. Reg. 59540 (Nov. 18, 2009). The FDIC also notified Brech of this determination by letter after Brech filed this action. *See* Docket 1-2 at 45-47.

On December 1, 2009, Brech filed a complaint in the Circuit Court of Minnehaha County, South Dakota against IndyMac and Does 1-50. *See Leon C. Brech v. CU Mortgage Direct, LLC, OneWest Bank, & FDIC*, Civ. 09-5330

(S.D. 2d Cir. 2009). On May 28, 2010, Brech filed an Amended Complaint to Clarify the Claim against CU Mortgage, OneWest, the FDIC, and Does 1-50. The FDIC removed the entire action to this court.

## I.   The FDIC's Motion

Brech appears to argue that the FDIC and IndyMac breached their contract with Congress when IndyMac went bankrupt and that the Note was fully discharged by Uniform Commercial Code § 3-603 when Brechs filed their Addendum to Mortgage. The FDIC moves to dismiss Brech's claims against it under Rule 12(b)(1) or, in the alternative, for summary judgment under Rule 56(c). "[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset . . . ." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990); *see also City of Kan. City, Mo. v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010) (reasoning that "[f]ederal courts have an independent duty to determine subject matter jurisdiction" and that issue "must be resolved before reaching the merits of a suit." (citations omitted)). Accordingly, the court will first review the FDIC's motion to dismiss under Rule 12(b)(1).

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that the court may dismiss an action for lack of subject matter jurisdiction. Rule 12(b)(1) " 'is rooted in the unique nature of the jurisdictional question.' " *Osborn*, 918 F.2d

at 729 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Accordingly, in determining a Rule 12(b)(1) motion, the court may look to evidence outside the pleadings. *Id.* Reviewing outside evidence under Rule 12(b)(1) does not convert the motion into a Rule 56(c) summary judgment motion like reviewing outside evidence does in the context of a Rule 12(b)(6) motion to dismiss. *Deuser v. Vecera*, 139 F.3d 1190, 1192 n.3 (8th Cir. 1998).

The plaintiff bears the burden to establish that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)), and " 'no presumptive truthfulness attaches to the plaintiff's allegations . . . .' " *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). If the court finds that jurisdiction is not present, it must dismiss the case. Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

**B.     Discussion**

The FDIC raises numerous arguments to support its motion: (1) the FDIC's no value determination means that there is no possibility that Brech can recover on his claim; (2) Brech did not exhaust his administrative remedies; (3) because no effective relief can be granted to Brech, the court lacks jurisdiction; (4) Brech's claims should be dismissed on mootness

6

because no relief can be granted; and (5) 12 U.S.C. § 1821(j) precludes Brech's claims. The court has consolidated the FDIC's arguments into two broad categories, administrative remedies and mootness.

### 1.    Administrative Remedies

Because Brech chose to bring suit against the FDIC, his claims are now controlled by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73; 103 Stat. 529. FIRREA has a mandatory administrative claims process.

Under this process, all claims against a federally-insured failed institution when the FDIC is receiver must be submitted to the FDIC by the claims bar date before they can be asserted in a court action. *See generally* 12 U.S.C. §§ 1821(d)(3)-(13) (describing how the FDIC receives and handles administrative claims). Under the claims process, the FDIC has 180 days to review and grant or deny all filed claims. 12 U.S.C. § 1821(d)(5)(A)(I). If the FDIC denies a claim in whole or in part, only then can the claimant seek relief in a district court. *See* 12 U.S.C. §§ 1821(d)(3)-(13).

The administrative claims process is mandatory: "The language of FIRREA clearly indicates that unless administrative procedures are complied with, no court shall have jurisdiction to evaluate a claim brought against a failed banking institution for whom the [FDIC] has been appointed receiver." *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) (stating

that all courts that have addressed this issue have similarly held); *see also McMillian v. FDIC*, 81 F.3d 1041, 1045 (11th Cir. 1996) ("FIRREA makes exhaustion of the FDIC's administrative complaint review process mandatory when the FDIC has been appointed receiver for a financial institution." (quotation omitted)); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process."). "Indeed, the Supreme Court has consistently held that where Congress has imposed an administrative exhaustion requirement by statute, the exhaustion of those procedures is mandatory." *Bueford*, 991 F.2d at 484 (citing *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 579 (1989)). In *Bueford*, the Eighth Circuit upheld a district court's dismissal with prejudice under Rule 12(b)(1) when the plaintiff brought suit against a bank that was in receivership under 12 U.S.C § 1821 because the plaintiff failed to exhaust the statutory administrative remedies. *Bueford*, 991 F.2d at 487.

FIRREA requires Brech to have exhausted his claims against the FDIC under the Act's claim process before bringing an action in court. Dismissal of the claims against the FDIC under Rule 12(b)(1) with prejudice is proper because Brech failed to exhaust his administrative remedies before bringing suit against the FDIC.

## 2. Mootness

Moreover, because no effective relief could be granted to Brech, the court also lacks jurisdiction under the prudential mootness doctrine. Article III of the United States Constitution limits federal courts' jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2. "It has long been settled that a federal court has **no authority** 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992) (emphasis added) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

Under the prudential mootness doctrine, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). If no effective relief can be granted, the court does not have jurisdiction over that claim. *Id.* ("To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a **favorable judicial decision**." (emphasis added) (citing *Simon v. E. Ky. Welfare Rights Org.*, 464 U.S. 67, 70 (1983))).

If Brech were to prevail on his underlying claim, he could not obtain any effective relief from the FDIC. Under FIRREA, the FDIC's maximum liability

9

"shall equal the amount such claimant would have received if the Corporation had liquidated the assets and liability of such institution . . . ." 12 U.S.C. § 1821(i)(2). This limitation reflects Congress's intent that creditors of a failed institution "look only to the assets of the institution for recovery of their losses, and not to the taxpayers." *First Ind. Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992) (citing *Village S. Joint Venture v. FDIC*, 733 F. Supp. 50, 52 (N.D. Tex. 1990)).

When a receivership's estate has insufficient assets to satisfy general creditors' claims, unsecured general creditors cannot collect. 12 U.S.C § 1821(I)(2). Courts routinely find that they lack jurisdiction under the prudential mootness doctrine when a plaintiff sues the FDIC and the FDIC has determined that the receivership estate has insufficient assets to satisfy the claims. *See, e.g.*, *Adams v. Resolution Trust Corp.*, 927 F.2d 348, 354 (8th Cir. 1991) (reasoning that dismissal was appropriate when "the claim [was] moot on prudential grounds because the Bank Board's determination that [the bank's] assets were insufficient to meet the claims of general creditors meant that the court could not grant [the] subordinate debt holder . . . any effectual relief" (citation omitted)); *First Ind. Fed. Sav. Bank*, 964 F.2d at 507 (reasoning that if the court cannot grant effective relief under FIRREA, then the action is moot and should be dismissed); *Resolution Trust Corp. v. Greenwood*, 798 F. Supp. 1391, 1399 (D. Minn. 1992) (finding that prudential mootness barred

an affirmative defense against a receiver protected by FIRREA); *McNeily v. United States*, 839 F. Supp. 426, 429 (N.D. Tex. 1992) (finding that a "determination of worthlessness evidences the impossibility of effective relief, and is sufficient to support dismissal on prudential mootness grounds." (citations omitted)).

The FDIC determined that IndyMac's assets were insufficient to pay general creditors and published notice of this determination. *See Determination of Insufficient Assets to Satisfy Claims Against Financial Institution in Receivership*, 74 Fed. Reg. 59540 (Nov. 18, 2009). The FDIC also gave Brech notice of its worthless assets determination in a letter dated December 29, 2009. *See* Docket 1-2 at 45-47. The notice advised Brech that "even if the receivership process had been followed and service had been proper, further pursuit of this litigation against IndyMac is not warranted and would be futile because of a recent determination [worthless assets determination] by the FDIC board of directors." Docket 1-2 at 45 (emphasis omitted). Brech does not contest that he is a general unsecured creditor. General unsecured creditors cannot recover from a receivership's estate once the FDIC has made a worthlessness determination. Even if Brech were to be successful in his claims against the FDIC, the court could not grant him any effective relief. Accordingly, dismissal is also appropriate under the prudential mootness doctrine.

### 3.    Brech's Arguments

In arguing against dismissal, Brech initially contends that the FDIC must state whether it still has an interest in the Note or Mortgage. Docket 13 at ¶ 2 ("[N]owhere does any of the information state whether the specific Note and Mortgage executed by Plaintiff were among the properties ever held and handled by FDIC [.]"). Brech also argues that if the FDIC "is disagreeing with how the Federal Reserve System of money has been totally converted from circulating lawful money to circulating credit money (***so called***) . . . ***then FDIC must be required to answer the complaint***." Docket 13 at ¶ 8 (emphasis in original). Brech believes that "any agreements to pay money could not specify any particular kind of money, certainly and especially not any lawful money, that no longer generally circulates at par with credit money by redemption." Docket 13 at ¶ 12.

After the FDIC responded that "Brech appears to just recite the alleged facts of his complaint with no additional legal support for why he is entitled to relief on such claims and/or why such claims should not be dismissed against FDIC-Receiver," Docket 15 at 2, Brech changed his argument. In his response to the FDIC's reply,[3] Brech appears to agree that dismissal is appropriate:

---

[3] The court considered Brech's response to the FDIC's reply, i.e., a surreply, even though parties generally must seek the court's permission before filing a surreply to a motion. *See* D.S.D L.R. 7.1(B) (stating that motions have three briefs, a supporting brief, an opposing brief, and a reply brief).

> FDIC was a party simply to make sure that if they have those assets [Note and Mortgage], they need to provide the accounting for same. Otherwise, there is no point in them seeking dismissal of the claim. If they have no assets that belong to or relate to the Plaintiff, then Plaintiff will gladly allow dismissal, with the provision that they do not claim any interests in the property described in the Mortgage.

Docket 16 at ¶ 2; *see also* Docket 16 at ¶ 6 ("Again, FDIC simply seeks dismissal of one party, themselves, on grounds that their estate has no value. Fine, then go. I will gladly let you go . . . [but] FDIC may never place a claim or right on the described property."); Docket 16 at ¶ 10 ("If FDIC has no interest in The Bonded Promissory Note . . . then so be it. FDIC just needs to go and let the other parties exert any rights or claims."). Brech appears to want this court to order that the FDIC state that it has no interest in the Note or Mortgage and then it can be dismissed: "If FDIC had no duty and obligation to process and negotiate the Note . . . then FDIC is to simply so state, and then leave." Docket 16 at ¶ 11.

Upon careful reading of Brech's complaint and his two briefs in opposition to the FDIC's motion, the court can find no argument to refute that FIRREA mandates that Brech first exhaust his claim in the FDIC's administrative claim process or that prudential mootness bars his claim. It further appears that Brech now agrees dismissal is appropriate as long as the FDIC states that it has no interest in the Note or Mortgage. Such a showing by the FDIC is unnecessary, however, because even if the FDIC has some

remaining interest in the Note or Mortgage, no effective relief could be granted to Brech. Therefore, the court lacks jurisdiction over this action and dismissal with prejudice under Rule 12(b)(1) is appropriate.

## II.    CU Mortgage's Motion

CU Mortgage moves for summary judgment under Rule 56(c) and, in the alternative, for dismissal under Rule 12(b)6). Because the court must look to evidence outside the pleadings, the court will consider CU Mortgage's motion as a motion for summary judgment. *See Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 949 (8th Cir. 1999) (reasoning that if the district court reviews any written support outside the pleadings at issue that do not merely reiterate the pleadings, then the court has converted a motion to dismiss into a motion for summary judgment).

### A.    Standard of Review

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the

14

evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise show that a genuine issue exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Rule 56(c)(2) and its long-standing standards also apply to pro se pleadings, despite the liberal construction afforded to these pleadings. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987); *see also Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (reasoning that the district court is not required to "plumb the record in order to find a genuine issue of material fact" in a pro se petitioner's case).

**B.    Discussion**

**1.    Jurisdiction**

Brech argues that because the FDIC removed this action and because dismissal of the FDIC is appropriate that the court "should simply deny the

removal and order the matter back to State Court to settle the matter as it relates to other parties." Docket 16 at ¶ 7; *see also* Docket 16 at ¶ 15 ("Removing a State Court Action, just to claim grounds for dismissal appears to reflect abuse of discretion, to involve this Court.").

Brech appears to allege a contractual cause of action against CU Mortgage, which is a state-law claim. Usually, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Casey v. FDIC*, 583 F.3d 586, 590 (8th Cir. 2009) (reasoning that 28 U.S.C. § 1447(c) normally "requires that a case removed to federal court be remanded if at any time it is determined that subject matter jurisdiction is lacking." (citing *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003))).

Because Brech named the FDIC as a defendant, however, this entire action falls under FIRREA. 12 U.S.C. § 1819(b)(2)(A); *Casey*, 583 F.3d at 591. In *Casey*, the Eighth Circuit reasoned that "all claims in a case to which the FDIC is a party have 'arising under' federal subject matter jurisdiction." *Id.* "[T]he FDIC's presence effectively federalize[s] the entire action." *Hayes-Broman v. J.P. Morgan Chase Bank, N.A.*, 724 F. Supp. 2d 1003, 1012-13 (D. Minn. 2010) (citations omitted). Once a plaintiff brings suit against the FDIC, " 'the entire action is deemed to arise under the laws of the United States and is within the original jurisdiction of the district court.' " *Casey*, 583 F.3d at 591

(quoting and adopting the reasoning of *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 77 F.3d 1063, 1067 (8th Cir. 1996)). Thus, this court has original "arising under" jurisdiction over Brech's contract claim against CU Mortgage.

Even if the FDIC is dismissed before a final judgment is entered, the court retains jurisdiction over state-law claims brought against other parties: "[A] subsequent dismissal of the claim against the FDIC [does] not defeat that jurisdiction or withdraw the court's jurisdiction over the state law claims filed against the other" parties. *Casey*, 583 F.3d at 591. Thus, after the FDIC is dismissed and only state-law claims remain, the court "retain[s] jurisdiction over the [state law] claims, [and] section 1447(c) does not require that they be remanded" to state court. *Casey*, 583 F.3d at 591; *see also Hayes-Broman*, 724 F. Supp. 2d at 1012-13 ("[N]ot only does the Court retain subject matter jurisdiction, it has ***no discretion*** under 28 U.S.C. § 1441(c) (2006) to remand this action in which state law predominates." (emphasis added) (citation omitted)). Consequently, remand is improper and the court retains jurisdiction over Brech's state-law claims against CU Mortgage.

### 2.  Res Judicata

CU Mortgage believes that Brech is "requesting this Court to re-address issues in the foreclosure proceeding [*Civ. 08-4408*] and enter an injunction and order voiding the judgment in the foreclosure proceeding." Docket 10 at 1.

17

Brech does not dispute this characterization. Given the relief sought, CU Mortgage argues that res judicata bars this action because of the outcome of *Civ. 08-4408*.

Under *Casey*, the court has original "arising under" jurisdiction over Brech's contract claims against CU Mortgage. *Casey*, 583 F.3d at 591. Under the *Erie* doctrine (*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)), a court ordinarily applies federal law when it has arising under jurisdiction. *FDIC v. First Interstate Bank of Des Moines*, 885 F.2d 423, 429 (8th Cir. 1989). But res judicata is a matter of substantive law. *Hillary v. Trans World Airlines*, 123 F.3d 1041, 1043 (8th Cir. 1997) (citing *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir. 1994)). *Casey* did not resolve the question of whether federal or state law would apply when the FDIC is dismissed but the court retains jurisdiction over state-law claims due to FIRREA's jurisdictional provisions. In the absence of FIRREA, state law would apply to the substantive issues of Brech's claims against CU Mortgage because those claims sound in contract law. Assuming that *Casey* did not upset the long-standing *Erie* doctrine and noting that Eighth Circuit and South Dakota law on res judicata are nearly identical, the court will apply South Dakota law on res judicata and all other substantive legal issues.

Res judicata is premised upon two maxims: "A person should not be twice vexed for the same cause and public policy is best served when litigation

has a repose. These maxims are served when the parties have had a fair opportunity to place their claims in the prior litigation." *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 157 (S.D. 1983) (citations omitted). South Dakota employs a four-part test for res judicata: (1) a court of competent jurisdiction issued a final judgment on the merits in an earlier action; (2) the claim decided in the former action is the same as the one in the current action; (3) the parties are the same; and (4) the parties received a full and fair opportunity to litigate the issue in the former action. *Farmer v. S.D. Dep't of Revenue & Regulation*, 781 N.W.2d 655, 659 (S.D. 2010) (citing *People ex rel L.S.*, 721 N.W.2d 83, 89-90 (S.D. 2006)).[4] "When examining whether the doctrine applies, 'a court should construe the doctrine liberally, unrestricted by technicalities.' " *Id.* (quoting *L.S.*, 721 N.W.2d at 90).

The first element, a final judgment on the merits, is met because Judge Tiede for the Second Judicial Circuit of Minnehaha County, South Dakota issued a judgment in *Civ. 08-4408*. Brech neither disputes that *Civ. 08-4408* ended in a final judgment nor that the court had jurisdiction to hear the case. Under the second element, the same claim, the "test is a query into whether

---

[4] South Dakota's test mirrors the test used by the Eighth Circuit: " '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.' " *Yankton Sioux Tribe v. United States Dep't of Health & Human Serv.*, 583 F.3d 634, 639 (8th Cir. 2008) (quoting *Costner v. URS Consultants, Inc.,* 153 F.3d 667, 673 (8th Cir. 1998)).

the wrong sought to be redressed is the same in both actions." *Black Hills Jewelry*, 336 N.W.2d at 157. Because res judicata "embodies the concepts of **merger** and **bar**, [it] is therefore broader than the **issue** preclusion function of collateral estoppel." *Id.* (citing *Palma v. Powers*, 295 F. Supp. 924 (N.D. Ill. 1969)).

In *Civ. 08-4408*, IndyMac brought a foreclosure proceeding against Brech. Brech answered IndyMac's complaint with a general denial and failed to assert any defenses or counterclaims. *See Civ. 08-4408*, Summary Judgment Order, Docket 12-2 at 2 ("Defendants, Leon C. Brech and Rhonda M. Brech, have made an appearance, are not represented by counsel, and have interposed an answer, however, the answer raised no specific defenses and was a general denial."). Brech now appears to argue that the assignment of the Mortgage by CU Mortgage to IndyMac was fraudulent.

Under South Dakota law, a party claiming fraud must plead it as an affirmative defense. SDCL 15-6-8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud . . ."); *see also Sperry Corp. v. Schaeffer*, 394 N.W.2d 727, 730 (S.D. 1986) (discussing the duty to plead fraud affirmatively (citing *Nw. Realty Co. v. Colling*, 147 N.W.2d 675 (1966))). "A defendant has a duty to plead affirmative defenses and failure to do so would result in the defense being barred." *Century 21 Assoc'd Realty v. Hoffman*, 503 N.W.2d 861, 865 (S.D. 1993) (citing *Schecher v. Shakstad Elec. & Mach. Works*,

20

414 N.W.2d 303 (S.D. 1987)); *see also Farmers Co-op. Elevator Co. v. Johnson*, 237 N.W.2d 671, 673 (S.D. 1976) ("Defendant had a duty to plead this defense in order to claim its protection and, having failed to do so, he cannot now retry his case . . . ."). Only two exceptions to this general rule exist: (1) if the pleadings are properly amended to include the defense; or (2) the issue was tried by consent. *Hoffman*, 503 N.W.2d at 865 (citations omitted).

In *Civ. 08-4408*, the Brechs never amended their answer to include an affirmative defense of fraud and no evidence suggests that the parties tried the fraud issue by consent. Because neither of the exceptions to the general rule apply, Brech waived his right to assert an affirmative defense of fraud and may not relitigate the issue of fraud in this court.

The South Dakota Supreme Court liberally construes the third element, the same parties: "Res judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, to a party in the earlier suit." *Black Hills Jewelry*, 336 N.W.2d at 157 (citing *Melbourn v. Benham*, 292 N.W.2d 335 (S.D. 1980)). In *Schell v. Walker*, 305 N.W.2d 920 (S.D. 1981), the South Dakota Supreme Court expanded privity in the res judicata context:

> Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different, and parties nominally different may be, in legal effect, the same. In deciding who are parties for the purpose of determining the conclusiveness of prior judgments, the courts look beyond the nominal parties, and treat all those whose interests are involved in

the litigation and who[se] conduct and control the action or defense
as real parties, and hold them concluded by any judgment that
may be rendered.

*Id.* at 922 (citing *Keith v. Willers Truck Serv.*, 266 N.W. 256, 257-58 (S.D.

1936)); *see also Black Hills Jewelry*, 336 N.W.2d at 157 (reasoning that *Schell*

"modif[ied] the strict privity requirement . . . ."). Thus, the issue is whether CU

Mortgage and IndyMac are in privity for *Civ. 08-4408*.

CU assigned the Mortgage to IndyMac in 2008 and that assignment was

properly recorded. In the context of land transactions, courts have held that

the assignment of a contract puts the assignor and assignee in privity, meaning

that an assignee is bound by the terms of the document as held by the

assignor. *See, e.g.*, *United States v. Woods*, No. 02-1411, 2004 WL 790332, at

*2 (D. Minn. Mar. 31, 2004) (holding that an assignee of a quitclaim deed was

in privity with the assignor and had to abide by the statements made in the

quitclaim deed); *City Line Joint Venture v. United States*, 503 F.3d 1319, 1322-

23 (Fed. Cir. 2007) (finding that a home developer was in privity of contract

with the Department of Housing and Urban Development (HUD) because a

private lender assigned the home's mortgage and note to HUD).

Even if the assignment did not put CU Mortgage and IndyMac in privity,

the court examines whose conduct controls the action to determine whether res

judicata bars this case. *Schell*, 305 N.W.2d at 922. The conduct here is the

assignment of the Mortgage by CU Mortgage to IndyMac and whether that

assignment was fraudulent. In granting summary judgment to IndyMac in *Civ. 08-4408*, Judge Tiede "ordered, adjudged and decreed" that the Mortgage had been assigned to IndyMac, was properly filed as required in South Dakota law, and was "a valid lien upon the premises . . . and which mortgage is hereby foreclosed." Docket 12-2 at 3. Brech asks this court to find that CU Mortgage fraudulently assigned the Mortgage to IndyMac. But Judge Tiede already determined that the Mortgage was properly assigned. Thus, as to the narrow issue of whether the Mortgage was fraudulently assigned, the substance of Brech's argument, CU Mortgage and IndyMac are in privity.

In determining the fourth element, whether there was a full and fair opportunity to be heard, the court looks at whether the plaintiff could have raised the issue during the first action. *Frigaard v. Seffens*, 599 N.W.2d 646, 649 (S.D. 1999); *see also Wells v. Wells*, 698 N.W.2d 504, 508-09 (S.D. 2005) (" 'The principle of finality has its strongest justification where the parties have had full opportunity to litigate a controversy . . . .' " (quoting Rest. (Second) of Judgments § 12 cmt. a (1982))). If a party against whom res judicata is asserted had the ability to request reconsideration of the order or could have appealed the order, the full and fair opportunity element is met. *Flugge v. Flugge*, 681 N.W.2d 837, 841-42 (S.D. 2004).

Brech acknowledges that he is seeking review of Judge Tiede's order because he argues that Judge Tiede was "manipulated" into granting summary

judgment in *Civ. 08-4408*. Docket 12 at ¶ 5(M). Brech should have raised this argument in *Civ. 08-4408* as an affirmative defense, in a motion to reconsider, or in an appeal to the South Dakota Supreme Court. His failure to do so is fatal to his claim against CU Mortgage in this action. This is consistent with the policy of according finality to judgments and preventing vexatious litigation. Because IndyMac and CU Mortgage are in privity as to the ultimate issue in this case and Brech received a full and fair opportunity to litigate the issue in *Civ. 08-4408*, res judicata applies to this action.

Brech argues that *Civ. 08-4408* is not at issue here: "All references to [*Civ. 08-4408*] . . . are irrelevant to the basic claim of the surrounding circumstances of the original transaction that CU Mortgage Direct LLC had done, which under new understanding was the basis and reasons for the modification, arrest of Sheriff Sale and Judgment." Docket 14-1 at 2. While Brech does not state what facts support this "new understanding," it appears that he is arguing that the "new understanding" is that *Civ. 08-4408* was a fraudulent action and, therefore, res judicata does not bar this action: "The Attorney's [CU Mortgage] reference to that foreclosure [sic], as "*res judicata*" and final, is fraudulently presented in the Motion, knowing of the fraudulent character of the foreclosure action . . . ." Docket 14-1 at 6.

24

Brech does not clearly state how the foreclosure was fraudulent, but it appears that he believes the fraud is connected to the "credit" money system, which he believes is not a real monetary system:

> Since, the Federal Reserve System of money has totally converted circulating lawful money to circulating credit money (**so called**) only, Plaintiff has no option but to tender and make payments in no other form but in federal reserve notes, legal tender, or that which is equivalent and is accepted as deposits in the private Federal Reserve Banking System. Even what was alleged as a loan of money, was not a loan of real money. In fact, THERE WAS NO LOAN OF MONEY MADE BY CU MORTGAGE DIRECT, LLC, as is admitted by Attorney for CU MORTGAGE DIRECT, LLC.

Docket 14-1 at ¶ 5C (emphasis in original). Brech further contends that CU Mortgage and IndyMac did not properly account for the Mortgage assignment in a T-Chart or in electronic forensic accounting. Docket 14-1 at ¶ 10. Thus, he requests that this court require defendants to provide an accounting and grant Brech "an injunction and order of void due to fraud." Docket 14-1 at ¶ 10A.

Brech's arguments are unpersuasive. Brech reasserts the claims in his complaint in his brief opposing CU Mortgage's motion for summary judgment. He does not engage in any substantive analysis of res judicata. Because res judicata bars this action and no genuine issues of material fact exist, CU Mortgage is entitled to summary judgment.

## CONCLUSION

Brech filed suit against the FDIC as receiver for IndyMac, OneWest (IndyMac's successor), CU Mortgage, and Does 1-50. The FDIC's motion for

25

dismissal based on lack of jurisdiction is granted because Brech failed to comply with FIRREA's mandatory administrative claims process and because the court could not grant effective relief even if Brech was successful. CU Mortgage's motion for summary judgment is granted because this case is barred by res judicata as to CU Mortgage. Accordingly it is

ORDERED that defendant CU Mortgage Direct, LLC's motion for summary judgment (Docket 9) is granted, and the FDIC's motion to dismiss (Docket 4) is granted.

Dated February 7, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE